UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERSTATE FIRE AND CASUALTY COMPANY<br>33 West Monroe Street, Suite 1200<br>Chicago, IL 60603,<br><br>     Plaintiff,<br><br>vs.<br><br>WASHINGTON HOSPITAL CENTER CORPORATION,<br>d/b/a WASHINGTON HOSPITAL CENTER<br>110 Irving Street, NW<br>Washington, DC 20010-2975<br><br>and<br><br>GREENSPRING FINANCIAL INSURANCE LIMITED,<br>Craig Appin House<br>8 Wesley Street<br>Hamilton, HM JX<br>Bermuda<br><br>and<br><br>MEDSTAR HEALTH, INC.<br>5565 Sterret Place<br>Columbus, MD 21044<br><br>     Defendants. | Civil File No. _____ |

## COMPLAINT

Plaintiff Interstate Fire and Casualty Company ("Interstate"), for its Complaint against defendants, states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This is an action for monetary and declaratory relief, pursuant to Rule 57, Fed. R. Civ. P. and 28 U.S.C. §§ 2201 and 2202, arising from MedStar Health, Inc.'s ("MedStar's") breach of its contractual duty to indemnify and reimburse Progressive Nursing Staffers of Virginia, Inc. ("Progressive") for defense costs incurred and indemnity payments made by one of its insurers, Interstate, in an underlying medical malpractice lawsuit.

2. Interstate is an Illinois corporation, with its principal place of business in Illinois.

3. Upon information and belief, Defendant Washington Hospital Center Corporation ("WHC") is a corporation organized under the laws of Delaware with its principal place of business in Washington, D.C.

4. Upon information and belief, Defendant Greenspring Financial Insurance Limited ("Greenspring") is a Cayman Islands company, having its principal places of business in Grand Cayman, Cayman Islands, and in Hamilton Bermuda. Upon information and belief, Greenspring is a subsidiary of or otherwise related to MedStar and provides professional liability insurance coverage to WHC and other MedStar health care facilities.

5. Upon information and belief, Defendant MedStar is a Maryland corporation, having its principal place of business in Maryland. MedStar is the parent/owner of WHC, and maintains a resident agent in Washington, D.C.

6. This Court has subject matter jurisdiction over this dispute pursuant to U.S. Code, Title 28, § 1332(a) (diversity). The citizenship of the parties is completely diverse and the amount in controversy exceeds the sum of Seventy-Five Thousand and no/100 Dollars ($75,000.00), exclusive of interest and costs.

7. Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(a) and (d) because a substantial part of the actions giving rise to the claims herein occurred in the District of Maryland and the underlying litigation giving rise to Interstate's claims was filed in the Superior Court for the District of Columbia.

8. This Court has personal jurisdiction over defendants because: (a) all defendants transacted business in this District; (b) all defendants had agents in this District; (c) all

defendants had substantial aggregate contacts with this District; (d) Defendant Greenspring contracted to insure persons, property, and risks in this District.

## JURY DEMAND

9. Plaintiff hereby demands a jury trial of any factual issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## FACTS

10. On or about March 19, 2007, Radianne Banks ("Banks") filed a Complaint against WHC and two doctors it employed, Mir Basharath A. Razvi, M.D. and Keung A. Ahn, M.D., arising out of alleged negligent medical care and treatment rendered by WHC and its agents or employees on or about April 6, 2004, in the Superior Court for the District of Columbia, Case No. 2007 CA 002022M (the "Underlying Litigation").

11. On or about June 25, 2008, in the Underlying Litigation, WHC filed a Third-Party Complaint against Chichio Hand, R.N. ("Hand") and Progressive, alleging contribution and indemnification.

12. Hand and Progressive subsequently filed a Fourth-Party Complaint in the Underlying Litigation against WHC and Barry Lewis, M.D., alleging contribution and indemnification.

13. Interstate issued "claims made" healthcare professional liability insurance coverage to Progressive Nursing Staffers of Virginia, Inc. through policy number ASC 1001897 and excess commercial liability coverage through policy number XSP 1100276. The healthcare professional liability policy was provided through form 01-PL-4002 (03/04) subject to a $1,000,000 limit of liability per incident. The excess commercial liability policy was provided through form number EXJ-1001 (08/94) (Ed. 01/04) subject to a $4,000,000 limit of liability.

Both policies were in effect from November 16, 2006 to November 16, 2007 with a retroactive date of November 16, 1997.

14. On or about August 14, 2009, Banks, WHC, Hand, Progressive, and Interstate entered into a Settlement Agreement and Release with respect to the claims asserted in the Underlying Litigation.

15. Under the terms of the Settlement Agreement and Release, Interstate, on behalf of its insureds, paid Banks a total of $3,055,000.00 (three-million fifty-five thousand dollars). The parties to the Settlement Agreement and Release specifically agreed that neither Interstate's payment nor anything in the Agreement waived Interstate's rights to seek reallocation of the settlement and to rely on the "other insurance" clauses in its policies to seek reallocation of the settlement payments it made.

16. Banks' claims arose out of the alleged negligence of Chichio Hand, a registered nurse, whose services were contracted out to WHC by Interstate's insured, Progressive. On or about March 6, 2004, a pregnant Radianne Banks presented to the Labor and Delivery Department of Washington Hospital Center complaining of pain in her left leg and right arm. A month later, Ms. Banks returned to the Hospital to undergo a C-section. At the conclusion of the C-section, anesthesia physicians were called because of Ms. Banks' inability to move her legs after the infusion stopped. A neurology consult revealed that Ms. Banks had a prolonged block. An MRI taken the next day revealed a thoracic cord infarct. Nurse Hand was responsible for Ms. Banks' immediate post-partum/post-operative care in the recovery room.

17. In the Underlying Litigation, WHC's Third-Party Complaint against Nurse Hand and Progressive incorporated the following causes of action:

Count I – Common Law Indemnity

Count II – Contractual Indemnity

Count III – Contribution.

18. WHC alleged that Ms. Banks' injuries were sustained solely as a direct and proximate result of the conduct of Nurse Hand. WHC alleged that pursuant to its service contract with Progressive, Nurse Hand was an employee of Progressive. WHC further alleged that Progressive agreed to hold harmless and indemnify WHC from and against "any liabilities, losses, claims, damages, obligations, deficiencies, judgments, amounts paid in settlement of any suits, actions, claims, proceeding or investigations, cost and expense (including, but not limited to interest, penalties, cost of investigation, reasonable attorneys fees and accountant fees and disbursements), suffered, sustained, incurred or required to be paid with respect to any and all claims and expenses arising out of or resulting from [Progressive's] negligent acts or omissions including those acts of its employees or agents."

19. Greenspring, a captive insurer, insures WHC through a "fronting" policy. This fronting policy constitutes other "valid and collectible" insurance for purposes of an "other insurance" clause.

20. The Interstate healthcare professional liability policy provides coverage in excess to the WHC's self insurance pursuant to the following other insurance provision:

> D.   OTHER INSURANCE:  <u>If there is other valid insurance (whether primary, excess, contingent or self-insurance) which may apply against a loss or claim covered by this policy, the insurance provided hereunder shall be deemed excess insurance over and above the applicable limit of all other insurance or self-insurance.</u>
>
> When this insurance is excess, the Company shall have no duty under this policy to defend any **Claim** or **Suit** that any other insurer or self-insurer has a duty to defend. If such other insurer or self-insurer refuses to defend such **Claim** or suit, the Company shall be entitled to the **Insured's** rights against all such other insurers or self-insurers for any **Claims Expenses** incurred by the Company.
>
> When both this insurance and other insurance or self-insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss or defense costs than

121263266v1 906148 57

the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss. Subject to the foregoing, if a loss occurs involving two or more policies, each of which provides that its insurance shall be excess, each will contribute pro rata;

* * *

(Emphasis added).

21. This provision expressly provides that it will apply in excess over and above the applicable limit of all other insurance, including self-insurance.

22. The excess commercial liability policy issued by Interstate includes the following "other insurance" provision:

> **K.  OTHER INSURANCE**
>
> If there is any (1) **Other Insurance**, or (2) insurance available to the **Insured** on an extended reporting period basis under either a **Primary policy** or **Other Insurance**, or (3) insurance available to the **Insured** on a retroactive basis under either a **Primary Policy** or **Other Insurance**, this policy shall apply as excess of and not contributory with such insurance.
>
> If the **Insured** has another Excess Liability Policy with **Us** (other than a policy issued to apply specifically excess of this policy) which provides coverage for a claim also covered by this policy, the **Insured** must elect which policy shall apply. **We** shall be liable under the policy so elected and shall not be liable under any other policy.

23. Interstate's excess commercial liability policy incorporates the following definitions of "other insurance" and "primary insurance":

> **E.  OTHER INSURANCE**-Insurance other than **Primary Insurance** or insurance which is specifically purchased by the **Named Insured** to be in excess of the insurance afforded by this policy, which is available to the **Insured** and affords coverage with respect to injury or damage to which this policy applies.
>
> * * *
>
> **H.  PRIMARY INSURANCE** – The policy or policies of insurance as described in the Schedule of Primary Insurance forming a part of the Declarations of this policy, including any Extended Reporting Period(s).

121263266v1 906148 57

24. Pursuant to these provisions, Interstate's excess commercial liability policy will apply in excess over and above the applicable limit of "other insurance" such as the Greenspring fronting policy.

25. The Greenspring fronting policy incorporates the following other insurance clause:

> X. **Other Insurance**
>
> <u>The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the *Insured* has other insurance that is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.</u>
>
> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
>
> (A) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if either insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.
>
> (B) Contribution by Limits. If any such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.
>
> <u>However, with respect to coverage afforded by this policy as it may apply to *Employees*, this insurance is designated primary and the foregoing provision contained in this section shall not apply.</u>

7

(Emphasis added).

26. The Greenspring fronting policy defines "Employees" as "all past, present, or future full-time or part-time Employees of the Named Insured including subsidiaries of the Named Insured."

27. Accordingly, pursuant to the terms of the Interstate and Greenspring "other insurance" clauses, the Greenspring fronting policy provides primary coverage and the Interstate policies provide excess coverage for Hand, and therefore Progressive, with respect to the Underlying Litigation.

28. WHC is liable for Nurse Hand's negligence because Nurse Hand was a borrowed servant and under the Hospital's control.

29. WHC is therefore liable for Nurse Hand's alleged negligence while Nurse Hand was under the control and direction of WHC.

## JUSTICIABLE CONTROVERSY

30. There exists a real, substantial, and justiciable controversy among the parties hereto, as they disagree as to their respective rights and obligations under the Greenspring fronting policy and the Interstate policies. Accordingly, Interstate seeks, among other things, the following:

   a. Declaration that Hand is an insured under the Greenspring fronting policy;

   b. Declaration that Interstate is entitled to reimbursement from MedStar and Greenspring for all amounts incurred by Interstate to satisfy attorneys' fees and costs paid and indemnity (settlement) payments made by Interstate on behalf of Hand and Progressive in the Underlying Litigation;

   c. Declaration that Interstate is entitled to an award of reasonable attorneys' fees and costs in connection with the prosecution of this action.

## COUNT I – BREACH OF CONTRACT

31. The allegations of Paragraphs 1-30 of this Complaint are incorporated herein as if fully set forth.

32. Pursuant to the Greenspring fronting policy at issue in this case, Hand is an Insured under the Greenspring fronting policy.

33. Pursuant to the terms and conditions of the Interstate and Greenspring policies at issue in this case, the Greenspring fronting policy provided primary coverage to Hand and the Interstate policies provided excess coverage to Hand in connection with the Underlying Litigation, thereby obligating Greenspring and MedStar to reimburse Interstate for all defense fees, costs and indemnity payments made on behalf of Hand and Progressive.

34. Defendants have refused and continue to refuse to acknowledge their contractual duties to provide coverage for Hand in connection with the Underlying Litigation under the terms of the Greenspring fronting policy and to reimburse the payments made by Interstate on behalf of Hand and Progressive.

35. By their refusal to acknowledge Hand as an insured, and their refusal to reimburse defense fees, costs and indemnification, defendants have breached their contractual duty to Hand under the Greenspring fronting policy.

36. Interstate, which stands in the shoes of Hand and Progressive for this matter, has suffered damages legally caused by the defendants' breach of contract in that it has incurred and paid the full amount of Hand's and Progressive's attorneys' fees and costs to defend the Underlying Litigation, as well as paid indemnity without reimbursement from defendants.

## COUNT II – CONTRIBUTION

37. The allegations of Paragraphs 1-36 of this Complaint are incorporated herein as if fully set forth.

121263266v1 906148 57

38. Pursuant to the terms and conditions of the insurance policies at issue in this case, defendants are obligated to reimburse Interstate for the sums it expended in defending Hand and Progressive in the Underlying Litigation and in settling the Underlying Litigation.

## COUNT III – SUBROGATION

39. The allegations of Paragraphs 1-38 of this Complaint are incorporated herein as if fully set forth.

40. Pursuant to the terms and conditions of the insurance policies at issue in this case, defendants are obligated to reimburse Interstate for the sums it expended in defending Hand and Progressive in the Underlying Litigation and in settling the Underlying Litigation.

## COUNT IV – DECLARATORY JUDGMENT

41. The allegations of Paragraphs 1-40 of this Complaint are incorporated herein as if fully set forth.

42. There is a justiciable controversy between Interstate and the defendants as to whether the insurance provided by Interstate provided excess or primary insurance to Hand and Progressive for claims asserted in the Underlying Litigation and whether the insurance provided by Greeenspring provided primary to coverage to Hand, and therefore Progressive, for claims asserted in the Underlying Litigation.

43. Interstate is entitled to a declaration that Hand is an insured under the Greenspring fronting policy because she was a borrowed servant and therefore an employee of WHC.

44. Interstate is entitled to a declaration that proper interpretation and construction of the "other insurance" clauses in both the Greenspring and Interstate insurance polices result in Greenspring's provision of primary insurance coverage to Hand and Interstate's provision of excess insurance coverage to Hand with respect to the Underlying Litigation.

45.     Interstate is entitled to a declaration that because Greenspring owed Hand, and therefore Progressive, primary insurance coverage in the Underlying Litigation, Greenspring is obligated to reimburse Interstate for the sums it expended in defending Hand and Progressive in and settling the Underlying Litigation.

## PRAYER FOR RELIEF

WHEREFORE, Interstate respectfully requests that the Court grant it the following relief:

i.   That this Court by judgment declare that the Greenspring fronting policy affords primary coverage to Hand for legal fees and indemnity in connection with the claims and allegations in the Underlying Litigation;

ii.  Damages in the amount equal to all legal fees and costs, and monies paid by Interstate on behalf of Hand and Progressive in defense and settlement of the Underlying Litigation;

iii. An award of reasonable attorneys' fees and costs in connection with the prosecution of this action;

iv.  The declaratory relief requested under Count IV; and

Such other and further relief as the Court deems just and appropriate.

Dated: July 15, 2010

HUDGINS LAW FIRM

BY: _____
David D. Hudgins, D.C. Bar No. 362451
HUDGINS LAW FIRM
515 King Street, Suite 400
Alexandria, VA 22314
(703) 739-3300
dhudgins@hudginslawfirm.com

and

HINSHAW & CULBERTSON LLP
Bethany K. Culp
Paulette S. Sarp
333 South Seventh Street, Suite 2000
Minneapolis, MN 55402
Telephone: 612-333-3434
Fax: 612-334-8888
bculp@hinshawlaw.com
psarp@hinshawlaw.com

**ATTORNEYS FOR PLAINTIFF**

12

121263266v1 906148 57