**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERSTATE FIRE AND CASUALTY COMPANY, | ) ) ) | Civil File No.  1:10-cv-01193 |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER** |
| WASHINGTON HOSPITAL CENTER CORPORATION, d/b/a WASHINGTON HOSPITAL CENTER, GREENSPRING FINANCIAL INSURANCE LIMITED, and MEDSTAR HEALTH, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

Interstate Fire and Casualty Company ("Interstate") submits the following memorandum of points and authorities in opposition to the Motion for Protective Order filed by Defendants Greenspring Financial Insurance Limited ("Greenspring") and Washington Hospital Center Corporation d/b/a Washington Hospital Center ("WHC").  Defendants Greenspring and WHC have failed to establish the "good cause" that is necessary for entry of a protective order restricting discovery pursuant to Rule 26(c).  Interstate therefore respectfully requests that this Court deny Defendants' Motion in its entirety.

**NATURE OF CLAIMS AND DEFENSES**

Interstate was forced to file this lawsuit in order to compel Greenspring to fulfill its obligations to provide primary insurance coverage to a mutual insured of both Greenspring and Interstate, a nurse named Chichio Hand.  Greenspring's policy provided primary coverage to Ms. Hand and Interstate's policy provided excess coverage to Ms. Hand.  But because Greenspring refused to contribute to the settlement of claims against Ms. Hand as required by its policy, Interstate was forced to defend and settle these claims and then pursue reimbursement.

Interstate requests in its Complaint that the Court enter judgment that it is entitled to reimbursement from Defendants for the amounts Interstate paid to defend and settle claims against Ms. Hand, who was involved in an alleged medical malpractice incident and who qualified as an insured under two applicable liability policies – one that was issued by Interstate and one that was issued by Greenspring.  Interstate issued a healthcare professional liability claims-made policy to Progressive Nursing Staffers of Virginia, Inc., a temporary staffing agency that provided nurses like Ms. Hand to WHC to meet WHC's staffing needs.  The Interstate policy is subject to a $1M limit of liability for each incident  During this same policy period, Interstate also issued an excess commercial liability policy to Progressive that is subject to a $4M limit of liability for each occurrence.  Defendant Greenspring issued the other liability policy under which Ms. Hand was insured.  The Greenspring policy was issued to WHC and specifically provides coverage to "employees" of WHC.  It is Interstate's position that Ms. Hand qualifies as an "employee" of WHC entitled to coverage under the Greenspring policy because she was acting under the direction and control of WHC at the time of the alleged malpractice incident and therefore qualifies as an "employee" pursuant to the plain meaning of this term and the well-established common law meaning of this term -- which also includes "borrowed servants" such as Ms. Hand.

On approximately August 14, 2009, the medical malpractice lawsuit brought by Radianne Banks was settled.  Interstate agreed to contribute $3,055,000 to settle the lawsuit and Greenspring/WHC/Medstar agreed to contribute $1,050,000 to settle the lawsuit.  Pursuant to the settlement agreement, Interstate specifically reserved the right to seek reallocation of the settlement amounts pursuant to the "other insurance" provisions in the Interstate and Greenspring policies.

The "other insurance" provisions included in the two policies that provide concurrent coverage to Ms. Hand warrant a finding that the Greenspring policy provides primary coverage and that the Interstate policies provide excess coverage. In other words, unless and until the limits of liability are exhausted under the Greenspring policy, Interstate does not have an obligation to defend or indemnify Ms. Hand.[1] The "other insurance" provision in the Interstate policy states in pertinent part as follows:

> D.   OTHER INSURANCE:  <u>If there is other valid insurance (whether primary, excess, contingent or self-insurance) which may apply against a loss or claim covered by this policy, the insurance provided hereunder shall be deemed excess insurance over and above the applicable limit of all other insurance or self-insurance.</u>
>
> <u>When this insurance is excess, the Company shall have no duty under this policy to defend any **Claim** or **Suit** that any other insurer or self-insurer has a duty to defend</u>.  If such other insurer or self-insurer refuses to defend such **Claim** or suit, the Company shall be entitled to the **Insured's** rights against all such other insurers or self-insurers for any **Claims Expenses** incurred by the Company.
>
> When both this insurance and other insurance or self-insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss or defense costs than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss. Subject to the foregoing, if a loss occurs involving two or more policies, each of which provides that its insurance shall be excess, each will contribute pro rata;
>
> \* \* \*

---

[1] The applicable limit of liability of the Greenspring policy is high enough to include the entire amount of the settlement of the underlying malpractice action.  Greenspring has requested that the specific limit be treated as confidential.  Greenspring has never requested that a protective order be entered that would preclude disclosure of this information, but in deference to Greenspring's request, Interstate will not disclose in this Response the specific limit or the specific deductible amounts.

(Emphasis added).2  The Greenspring policy includes the following "other insurance" provision:

**X.     Other Insurance**

<u>The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance.  When this insurance is primary and the **_Insured_** has other insurance that is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance</u>.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(A)  Contribution by Equal Shares.  If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if either insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each insurer has paid its limit in full or the full amount of the loss is paid.

(B)  Contribution by Limits.  If any such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

<u>However, with respect to coverage afforded by this policy as it may apply to **_Employees_**, this insurance is designated primary and the foregoing provision contained in this section shall not apply</u>.

---

2 Interstate's excess commercial liability policy also includes an "other insurance" provision stating that its coverage would only apply in excess over and above the applicable limit of "other insurance" such as the Greenspring policy

In their joint Answer, Defendants deny that Ms. Hand was an "employee" of WHC at the time of the alleged medical malpractice incident. Defendants seek to avoid the plain terms and provisions of the insurance policies issued by Interstate and Greenspring by arguing that whether or not Ms. Hand qualifies as an insured under the Greenspring policy should be determined by the terms of a completely separate contract – the Temporary Staffing Agreement between Progressive and WHC. For example, Defendants erroneously argue that this Agreement states that Ms. Hand is an employee of WHC "for insurance purposes." But *nowhere* does the Temporary Staffing Agreement make this statement. In addition, it is Interstate's position (supported by applicable case law that will be cited in Interstate's upcoming Motion for Summary Judgment) that it is unnecessary and inappropriate for the Court to look to the terms of the Temporary Staffing Agreement in order to evaluate the plain and ambiguous terms of the policies and their "other insurance" provisions at issue in this lawsuit.

In summary, whether or not Ms. Hand qualifies as an "employee" as that term is used in the Greenspring policy is clearly an issue in this litigation. In addition, as set forth more fully below, based upon affirmative defenses asserted by Defendants in their Answer, there also are issues as to which of the Defendants will ultimately be obligated to make the required reimbursements to Interstate based upon provisions in the Greenspring policy concerning who is responsible for defense and deductible obligations. Interstate served discovery on Defendants directly relating to these issues. It is these requests to which Defendants refuse to respond and that are now the subject of Defendants' Motion for Protective Order.

## SCOPE OF DISCOVERY DISPUTE

It should be noted at the outset that WHC and Greenspring do *not* seek to completely bar Interstate from taking a Rule 30(b)(6) representative of WHC. WHC does not dispute that at least as to the following categories set forth in Interstate's Second Amended Notice of Deposition

Pursuant to Rule 30(b)(6) served on WHC (Doc. No. 20-5), WHC will produce a witness to testify:

> 1. The nature of Chichio Hand, R.N.'s duties and obligations and actual work performed by Chichio Hand, R.N. during the time she worked at WCH in March and April of 2004.
>
> 2. The terms and provisions of the contracts (and applicable supplements or amendments) between WHC and Progressive that were in effect during March and April of 2004, including but not limited to, the Temporary Staffing Agreement between WHC and Progressive dated February 26, 2002 ("the Agreement").
>
> 3. "All applicable Hospital policies and procedures" and the "Hospital's orientation program" in effect during the time that Chichio Hand worked at WHC, as referred to in Article II, paragraph C and Article III, paragraph B of the Agreement.
>
> 4. All information provided to Chichio Hand as part of the "orientation" referred to in Article II, paragraph C and Article III, paragraph B of the Agreement, e.g., written materials distributed to Chichio Hand, emails, power-point presentations, outlines of information provided, etc.
>
> \* \* \*
>
> 7. Communications between WHC and Progressive concerning the Agreement or any other contract identified in WHC's response to Interstate's Request No. 1 (Second Set).
>
> 8. The duties and responsibilities of nursing staff at WHC in March and April of 2004, including charge nurses and supervisors and temporary or agency staff, relating to patient care.
>
> \* \* \*
>
> 15. The "Policy Governing Commercial Agency Registered Nurses (DEF. 000016-21) "Delivery Suite Police[ies] (DEF. 000022-31), "Standard Practices/Pain Management" (DEF 000032-39) produced by WHC and all other policies or guidelines issued by or in effect within WHC's "Division of Nursing" in March and April of 2004 relating to nursing care provided to patients at WHC.

(Doc. No. 20-5, pp. 2-4).

Interstate also notes for the record that upon further consideration it voluntarily agrees to withdraw several topics from its Rule 30(b)(6) notice, specifically, Topics 12 and 13, which requested information on other claims and lawsuits in which the issue of insurance for "borrowed servants" like Ms. Hand was an issue.  Interstate also withdraws its Requests for Production 9 and 10 to WHC and Requests for Production 5 and 6 to Greenspring on these same issues.

What remains at issue, therefore, are several of Interstate's requests for (1) information relating to the nature and scope of WHC's control over Ms. Hand for purposes of determining whether Ms. Hand qualified as an "employee" of WHC and therefore an insured under the Greenspring policy;[3] and (2) information as to which of the Defendants are responsible under the Greenspring policy for payment of defense and indemnity on behalf of Ms. Hand and, therefore, which of the Defendants is obligated to reimburse Interstate for these amounts based upon the reallocation required by the "other insurance" provisions included in the Interstate policy and the Greenspring policy.[4]

As to the first category of discovery sought by Interstate, which information is sought only from WHC, Defendants concede in their Motion that information relating to the nature of Ms. Hand's duties and the level of control exercised over her work by WHC is directly relevant to determining whether Ms. Hand qualifies as an "employee" of WHC and therefore an insured under the Greenspring policy.  (Defendants' Memorandum at pp. 13-14).  Nonetheless, WHC argues that it should not be required to produce this information because Interstate's requests are

---

[3] Topics 5, 6, and 14 in Interstate's Second Amended Notice of 30(b)(6) Deposition and Request No. 4, Interstate's Second Request for Production of Documents to WHC.

[4] Topics 9, 10, and 11 in Interstate's Second Amended Notice of 30(b)(6) Deposition of WHC; Request Nos. 6 and 7 in Interstate's Second Request for Production of Documents to WHC; and Request No. 1, 3, and 4 in Interstate's Second Request for Production of Documents to Greenspring.

too broad and that it would be "unduly burdensome" to gather and produce this information. These objections lack merit because, among other things, WHC produces no evidence to support its "undue burden" argument other than the vague and conclusory statements made by its counsel in its Memorandum. This is insufficient as a matter of law. See Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 242 F.R.D. 1, 10 (D.D.C. 2007) (quoting U.S. ex rel. Fisher v. Network Software Associates, 217 F.R.D. 240, 246 (D.D.C.2003)); Athridge v. Aetna Cas. and Sur. Co., 184 F.R.D. 181, 191 (D.D.C.1998) ("The party opposing discovery 'must show specifically how [a request] is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.'")(citing Chubb Integrated Systems Limited v. Nat'l Bank of Washington, 103 F.R.D. 52, 59-60 (D.D.C. 1984)).

As to the second category of discovery sought by Interstate, which information is sought from WHC and its insurer, Greenspring, Defendants' *only objection* is that this information is not relevant to the issues in this litigation. Notably, Defendants do *not* argue that it would be unduly burdensome to produce this information or that the information is somehow subject to a privilege of some sort. Defendants also fail to provide this Court with all of the pertinent information it needs to evaluate the relevance issue, arguing only that information as to which defendant paid defense and indemnity expenses under the Greenspring policy is irrelevant because Defendants do not seek to recover the defense and indemnity payments they made from Interstate. What Defendants fail to advise the Court is that *they* have raised *affirmative defenses* to Interstate's complaint that directly place into issue this type of information. For example, Greenspring alleges in its Seventh Affirmative Defense that it is not obligated under its policy to reimburse any defense costs to Interstate because its policy "does not obligate [Greenspring] to defend any Claim or Suit against an Insured. Rather, pursuant to the [Greenspring] contract, the Insured has

8

the rights and duty to manage and coordinate its own defense of any Claim or Suit brought against it." (Doc. No. 8, p. 7). In addition, Medstar asserts as an affirmative defense that it is not a proper party to this lawsuit because it "has no obligation under any insurance policy." (Doc. No. 8, p. 6). However, Medstar is an insured under the Greenspring policy along with WHC, and Medstar sent a letter to WHC's insurance broker dated July 31, 2007 in which Medstar advised that "[w]e are defending the above medical malpractice action" brought by Ms. Banks against WHC. (A copy of this letter is attached as Exhibit A.). In addition, the terms of the Greenspring policy include an "Inner Aggregate Endorsement" under which its insureds are charged with a significant deductible.[5]  Given that WHC/Greenspring/Medstar contributed only $1,050,000 to settlement of Ms. Banks' malpractice lawsuit (Interstate paid $3,055,000), it appears that WHC and/or Medstar would be obligated to pay at least a portion of the full amount of reimbursement for defense and indemnity sought by Interstate under the policies' respective "other insurance" clauses. Greenspring would be obligated to pay the remainder of the amount sought by Interstate.

Finally, it should be noted that in response to Defendants' objections to producing information as to which Defendant was obligated to make payments under the Greenspring policy upon re-allocation of the settlement, Interstate offered to withdraw these requests if

---

[5] Until just a few weeks ago, the only copy of the Greenspring policy that Defendants were willing to produce to Interstate redacted all information concerning the limits of insurance and the amount of any deductible that WHC or any other insured might be required to satisfy before Greenspring is obligated to pay if Interstate prevails on its claims for re-allocation. In October of 2010, Interstate served a request for production on Defendants requesting an un-redacted copy of the Greenspring policy so that it could evaluate the deductible issue and the corresponding obligations of WHC and/or Medstar under that policy. Defendants refused to produce this information until just last month under threat of a motion to compel – nearly six months after Interstate served its formal request for this information.  Again, because Defendants have requested that this information remain confidential, Interstate does not state the specific limits and deductible amounts in this Memorandum.

Greenspring was willing to agree that Greenspring alone would be responsible for payment of these re-allocation amounts under its policy. Greenspring refused to do so. Interstate's requests for this information therefore remain directly relevant to the issues in this litigation.

## LEGAL ARGUMENT

**I.     The scope of discovery authorized by the Federal Rules of Civil Procedure is broad.**

The Federal Rules allow a party to obtain discovery regarding "any non-privileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(a)(1). "[R]elevancy is broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case." Alexander v. F.B.I., 194 F.R.D. 316, 325 (D. D.C. 2000); see also TIG Ins. Co. v. Firemen's Ins. Co. of Washington, D.C., 718 F.Supp.2d 90, 96 (D. D.C. 2010) ("relevance is construed liberally, and there is no need to assure that the information requested is itself admissible, merely that the discovery request is reasonably calculated to lead to admissible evidence."). This broad scope of discovery is "to ensure that litigation proceeds with 'the fullest possible knowledge of the issues and facts before trial.'" TIG Ins. Co. v. Firemen's Ins. Co. of Washington, D.C., 718 F.Supp.2d 90, 96 (D. D.C. 2010) (citing Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

"The party objecting to ... discovery bears the burden of 'show[ing] why discovery should not be permitted.'" Convertino, 565 F.Supp.2d at 13 (citation omitted); see also Moore, 2009 WL 2450280 at *4 (citations omitted) ("Courts entertain overbreadth and undue burden objections only when the responding party demonstrates *how* a request is overly broad or unduly

10

burdensome."). Here, Defendants fall far short of meeting their burden and their Motion should be denied on all counts.

I.  **Defendant WHC has failed to establish that Interstate's requests for information concerning the nature of Ms. Hand's duties for WHC and WHC's control over Hand are "overbroad" and/or "unduly burdensome."**

WHC does not dispute that whether or not Ms. Hand is an "employee" under the plain language of the Greenspring policy and the common law meaning of that word is a legitimate issue in this litigation. (Memorandum at p. 13). WHC also does not dispute that Interstate is entitled to conduct discovery on this issue. (Id.) In fact, as set forth on pages 5-6 of this Memorandum, WHC as agreed to provide a 30(b)(6) witness to testify on several similar issues. Nonetheless, WHC now complains that the one Request for Production and three of the topics for 30(b)(6) deposition set forth on pp. 12-13 of their Memorandum are impermissibly broad and would unduly burden WHC if it were compelled to respond.[6] WHC's objections fail on both counts.

WHC's "undue burden" argument should be rejected outright. Although WHC claims that it would be unduly burdened by producing documents or producing a witness to testify on the "employee" issues, conspicuously absent from WHC's Memorandum is any actual evidence to support this claim. Courts will only entertain a claim of undue burden when the objecting party demonstrates how the request is "overly broad, burdensome, or oppressive, *by submitting affidavits or offering evidence which reveals the nature of the burden*." Tequila Centinela, S.A.

---

[6] WHC also points to the fact that it has admitted in response to Interstate's Requests for Admission that Ms. Hand was a "borrowed servant" of WHC's. Although it is Interstate's position that a "borrowed servant" is an "employee," it is WHC's position (as stated in its Memorandum on p. 3) that simply because Hand was a "borrowed servant" does not mean that she was an "employee" of WHC's. Clearly then, Interstate is entitled to further pursue discovery on the issue of whether or not Hand was an employee of WHC.

de C.V. v. Bacardi & Co. Ltd., 242 F.R.D. 1, 10 (D.D.C. 2007)(emphasis added)(quoting U.S. ex rel. Fisher v. Network Software Associates, 217 F.R.D. 240, 246 (D.D.C.2003)).  The objecting party cannot "'merely state' in a conclusory fashion" that the requests are burdensome.  Id.; see also Moore v. Napolitano, 2009 WL 2450280 at *4 (D.D.C. 2009).  "The party opposing discovery 'must show specifically how [a request] is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.'" Athridge v. Aetna Cas. and Sur. Co., 184 F.R.D. 181, 191 (D.D.C.,1998) (citing Chubb Integrated Systems Limited v. Nat'l Bank of Washington, 103 F.R.D. 52, 59-60 (D.D.C. 1984)).  WHC makes no effort to meet these requirements and its objections to Interstate's requests on the grounds of "undue burden" completely lack merit.

The weakness of this argument is further highlighted by WHC's claim that it should not be required to produce a witness to testify concerning "all 'written evaluations' for Chichio Hand, R.N. in connection with her work at WHC" is patently relevant to whether she was under the direction and control of WHC for purposes of qualifying as an "employee."  (Topic 6) (Memorandum at p. 14).  What could possibly be more relevant to whether WHC exercised direction and control over Ms. Hand so as to render Ms. Hand WHC's employee than WHC's evaluations of Ms. Hand?  Interstate is not requesting that WHC produce a witness who is capable of testifying as to the merits of these evaluations or to render first-hand accounts of Hand's actual performance, but rather, it is requesting a witness to testify as to the nature of the criterion used by WHC in evaluating employees like Ms. Hand, the purpose for completing evaluations of its personnel, to whom this information was provided, etc.  This is something that presumably has not changed significantly over the past several years and that an HR representative of WHC could readily testify to.  Moreover, WHC does not dispute that all of

WHC's evaluations relating to Ms. Hand would be included in a file or files under Ms. Hand's name and would not be difficult to locate.[7]

Finally, as to Topic 5, which requests that WHC provide someone to testify concerning the documents completed and/or signed by [Hand] in connection with her work at WHC," again, WHC has advised in response to Request for Production No. 4 that it "has previously provided copies of documents signed by Ms. Hand that relate to the terms of her work at WHC." (Memorandum at pp. 12-13).  Interstate is not requesting that WHC produce every patient note for every patient that Hand ever cared for at WHC.  At a minimum, Interstate is entitled to obtain testimony from a WHC representative as to the nature and type of documents Hand would complete and sign as part of her duties at WHC and to testify at least generally concerning the nature and content of the documents WHC has already produced on this issue.

WHC has failed to demonstrate "good cause" as to why Interstate should be precluded from completing discovery on these legitimate issues and its Motion should therefore be denied.

**II.     Defendants have failed to establish that Interstate's requests for information relating to their own affirmative defenses is irrelevant**.

As stated previously, Defendants completely omit from their Memorandum any discussion of the fact that they have asserted affirmative defenses that place the type of information sought by Interstate directly into issue.  To the extent Defendants are suggesting that they are entitled to assert defenses but at the same time deny Interstate the right to conduct discovery on these defenses, Defendants are, of course, wrong.  It is well-settled that information regarding a party's claimed defenses is discoverable – hence the very purpose of discovery.  See

---

[7] Topic 14 in the Second Amended Notice of 30(b)(6) Deposition of WHC is similar to Topic 6 and merely requests that WHC provide a witness to testify at least generally concerning documents that WHC has already produced in this litigation – evaluations, checklists and other documents Bates-labeled as DEF. 000040-86.

121280447v1 0906148 00057

Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…"); Chubb Integrated Systems Ltd. v. National Bank of Washington, 103 F.R.D. 52, 56 (D.C. D.C. 1984) (permitting discovery of information pertaining to defendant's defenses); Mead Corp. v. Riverwood Natural Res. Corp., 145 F.R.D. 512, 518 (D. Minn. 1992) (requiring answers to an Interrogatory requesting the facts which support the party's defenses and the names of people knowledgeable of those facts); Medtronic, Inc. v. Guidant Corp., 2003 WL 23864972 at *4-5 (D. Minn. 2003) (requiring answer to Interrogatory seeking basis for defenses asserted).

For example, Topic 9 included in Interstate's 30(b)(6) notice requests that WHC provide a witness to testify concerning "WHC's management and control of the defense of the Underlying Lawsuit, as referred to in Seventh Affirmative Defense set forth in Defendants' Combined Answer to Interstate's Complaint."  In Defendants' Seventh Affirmative Defense, Defendants allege that Greenspring is not obligated to reimburse Interstate for any defense costs because the Greenspring policy "does not obligate [Greenspring] to defend any Claim or Suit against an Insured.  Rather, pursuant to the [Greenspring] contract, the Insured has the right and duty to manage and coordinate its own defense of any Claim or Suit brought against it." (Doc. No. 8, p. 7). WHC is an insured under the Greenspring policy.  Therefore, Interstate is entitled to all documentation that supports Defendants' defense that it was WHC and/or Medstar (another insured under the Greenspring policy) that is responsible for payment of defense expenses under the policy and therefore reimbursement of defense expenses to Interstate.  Interstate also is entitled to explore this defense with a WHC representative.  Notably, Defendants do not argue that it would unduly burdensome to produce this information.

121280447v1 0906148 00057

Again, Interstate has offered to withdraw these discovery requests if Greenspring, as the insurer and entity that issued the Greenspring policy, would agree that it would be responsible for payment of any defense expenses ordered by the Court to be reimbursed to Greenspring. Greenspring was unwilling to agree to this. Accordingly, Interstate has no choice but to pursue discovery on these issues. Defendants cannot raise affirmative defenses and at the same time preclude Interstate from conducting discovery relating to these defenses.

## **CONCLUSION**

The foregoing facts and legal authority readily establish that Defendants' Motion for a Protective Order lacks merit. Interstate therefore respectfully requests that this Court enter an order denying Defendants' Motion in its entirety. Interstate further requests that the Court enter an order (1) requiring that Defendants serve supplemental responses to the Requests for Production that were the subject of Defendants' Motion for Protective Order (with the exception of the specific Requests Interstate has withdrawn as set forth on page 7 of this Memorandum) within 14 days of the date of the Court's Order, and (2) requiring that counsel for Defendants promptly contact counsel for Interstate with several proposed dates that WHC will be available for its 30(b)(6) deposition after Defendants have served their supplemental discovery answers.

Dated:  May 4, 2011.

                              HINSHAW & CULBERTSON LLP


                              By: /s/ Paulette S. Sarp
                                  Bethany K. Culp, Admitted Pro Hac Vice
                                  Paulette S. Sarp, Admitted Pro Hac Vice
                                  333 South Seventh Street, Suite 2000
                                  Minneapolis, MN  55402
                                  Telephone:  612-333-3434
                                  Fax:  612-334-8888
                                  psarp@hinshawlaw.com
                                  bculp@hinshawlaw.com

      and

David D. Hudgins, D.C. Bar No. 362451
HUDGINS LAW FIRM
515 King Street, Suite 400
Alexandria, VA  22314
Telephone:  703-739-3300
dhudgins@hudginslawfirm.com

**ATTORNEYS FOR PLAINTIFF INTERSTATE FIRE AND CASUALTY INSURANCE COMPANY**

### CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2011, a copy of the foregoing was served via ECF on:

Linda S. Woolf, Esq.
Joseph Wolf, Esq.
George S. Mahaffey, Jr., Esq.
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD  21201

      /s/ Paulette S. Sarp
      Paulette S. Sarp