## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ ) | | |
| INTERSTATE FIRE AND CASUALTY ) | | |
| COMPANY, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No. 10-1193 (ABJ) | |
| ) | | |
| WASHINGTON HOSPITAL CENTER ) | | |
| CORPORATION, d/b/a WASHINGTON ) | | |
| HOSPITAL CENTER, GREENSPRING ) | | |
| FINANCIAL INSURANCE LIMITED, ) | | |
| and MEDSTAR HEALTH INC., ) | | |
| ) | | |
| Defendants. ) | | |
| _____ ) | | |

### MEMORANDUM OPINION

Plaintiff, Interstate Fire and Casualty Co. ("Interstate"), brought this action against Washington Hospital Center Corp. ("WHC"), Medstar Health, Inc., and Greenspring Financial Insurance Ltd. ("GFIL"). Interstate seeks reallocation of a $3,055,000 payment that it made to patient Radianne Banks as part of the settlement agreement between Banks, Progressive Nursing Staffers of Virginia, Inc. ("Progressive") (insured by Interstate), Nurse Chichio Hand, and WHC (insured by GFIL), as well as legal fees, costs, and monies paid by Interstate in defense and settlement of the underlying litigation. The action is now before the Court on GFIL's objections to Magistrate Judge Alan Kay's Memorandum Order on the issue of damages. Mem. Order [Dkt. # 59] ("MJ Mem. Order"). GFIL has objected to the Magistrate Judge's Memorandum Order and asks the Court to set aside the Magistrate Judge's determination of damages on the basis that the Magistrate Judge lacked the authority to make a determination of the damages to be

awarded to Interstate, and that he erred in determining that Interstate was entitled to reimbursement of the entire $3,055,000 paid to Banks, and $148,062 in attorneys' fees.  The Court will construe the Magistrate Judge's Memorandum Order as a Report and Recommendation.  Because the parties to the underlying action agreed to preserve Interstate's right to seek reallocation of the entire $3,055,000, and Interstate is entitled to pre-judgment interest on that amount at the rate set forth in D.C. Code Section 28-3302(a), the Court will adopt the Magistrate Judge's findings and recommendations in full.

## JURISDICTION OF THE MAGISTRATE JUDGE

GFIL first objects to the Magistrate Judge's Memorandum Order on the basis that the Magistrate Judge lacks authority to make a determination of the damages to be awarded to Interstate.  The Court declines to wade into the legal question of the bounds of authority delegated to magistrate judges under the local rules of this Court, the Federal Rules of Civil Procedure, and the Federal Magistrates Act of 1968, 28 U.S.C. § 631 *et seq.* (2012).  Rather, the Court will treat the Magistrate Judge's Memorandum Order as a Report and Recommendation and, accordingly, review the portions to which GFIL has objected under a *de novo* standard.  *See Callier v. Gray*, 167 F.3d 977, 982–83 (6th Cir. 1999) (holding that a magistrate judge was authorized to provide a report and recommendation on a question of damages "subject to the district judge's ongoing supervision and final decision" under 28 U.S.C. § 636(b)(3), which gives magistrate judges "such additional duties as are not inconsistent with the Constitution and the laws of the United States"); *cf. Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 73 (1st Cir. 2001) (acknowledging that a magistrate judge could "hear the evidence and prepare a recommended decision as to the amount of damages [plaintiff was entitled]").  This will not

prejudice GFIL, which has had the opportunity to lodge its objections to any portions of the Magistrate Judge's order and to brief the relevant issues fully.

## FACTUAL BACKGROUND

Since neither party objects to the findings set forth in the background section of the Magistrate Judge's Memorandum Order, the Court will adopt those findings. In addition, the facts of this case are laid out in detail in the Court's previous Memorandum Opinion addressing liability. Memorandum Opinion (Mar. 28, 2012) [Dkt. # 47] ("Mem. Op."). In summary, the relevant facts are as follows:

In the litigation underlying this action, a patient named Radianne Banks sued WHC and two physicians for medical malpractice. *Id.* at 2; Defs.' Statement of Undisputed Material Facts [Dkt. # 33-2] ("Defs.' SMF") ¶ 46; *accord* Pl.'s Opp. to Defs.' SMF [Dkt. # 34] ¶ 46. WHC filed a third-party complaint against Nurse Hand, the nurse responsible for Banks's post-op care, and Progressive, the organization that supplied her to WHC. Mem. Op. at 2. The third-party complaint alleged contribution, and both common-law and contractual indemnification. *See* Third-Party Complaint, *Banks v. WHC*, No. 2007 CA 002022 M (D.C. June 25, 2008), Ex. 10 to Pl.'s Mot. for Partial Summ. J. [Dkt. # 32-14], ¶¶ 10–22. The contractual indemnification claim relied on a Temporary Staffing Agreement between Progressive and WHC, which provided that Progressive was required "to indemnify WHC for claims arising from the negligence of Progressive or its registered nurse employees who were provided to WHC." *Id.*; Mem. Op. at 5. Progressive and Nurse Hand filed a fourth-party complaint against WHC, in relevant part, for contribution and/or indemnification. *See* Settlement Agreement, Ex. 12 to Pl.'s Mot. for Summ. J. [Dkt. # 32-25], at 1.

Eventually, Banks, WHC, Hand, Progressive, and Interstate entered into a settlement agreement, which settled all of the underlying claims.  *Id.*  Interstate agreed to pay Banks a sum of $3,055,000, and WHC agreed to pay Banks a sum of $1,050,000.  *Id.* ¶ 4.  As part of the agreement, WHC released Progressive "from any and all claims" that "WHC may now have or may hereafter have against . . . Progressive by reason of any matter, cause or thing arising out of, or in any manner connected with, the Litigation . . . including but not limited to the Temporary Staffing Agreement."  *Id.* ¶ 2.  Hand and Progressive similarly released WHC "from any and all claims" that "Hand and Progressive may now have or may hereafter have against WHC by reason of any matter, cause or thing arising out of, or in any manner connected with, the Litigation or the facts giving rise to the Litigation."  *Id.* ¶ 3. The agreement also contained a provision that stated:

> Nothing contained in this Agreement should be construed as a waiver of [Interstate]'s rights under its policies to seek reallocation of the settlement. WHC agrees and understands that [Interstate] does not waive and expressly reserves the right to rely on the 'other insurance' clauses incorporated into its policies to seek reallocation of the settlement as may be warranted.

*Id*.  Finally, the agreement stated that "[t]his Settlement Agreement contains the entire agreement among the parties hereto with regard to the matters set forth in it . . . ."  *Id.* ¶ 15.

Interstate filed this action on July 15, 2010.  Compl. [Dkt. # 1].  The Complaint contains claims for breach of contract, contribution, subrogation, and declaratory judgment.  *Id.*  Both sides moved for summary judgment; Interstate moved only for partial summary judgment against GFIL on the contribution and declaratory judgment claims.

In its Order and accompanying Memorandum Opinion of March 28, 2012, [Dkts. # 46, 47],[1] this Court granted Interstate's motion for partial summary judgment against GFIL, denied GFIL's cross-motion for summary judgment, and granted summary judgment for defendants WHC and MedStar Health, Inc.  The Court found that GFIL's insurance contract with WHC covered the actions of Nurse Hand.  Moreover, since GFIL's contract provided primary insurance and Progressive's contract provided secondary insurance, Interstate was entitled to reimbursement from GFIL for the amount it paid to settle the underlying litigation.

In its Order, the Court directed the parties to file a joint status report stating their respective positions on the sole remaining issue:  the amount of damages to which Interstate was entitled in light of the Court's ruling on the merits.  *See* Order (March 28, 2012) [Dkt. # 46].  The parties filed their status report on April 26, 2012, [Dkt. # 50], and the Court referred the action to a Magistrate Judge for his or her determination of the amount of damages to be awarded, [Dkt. # 52].  The Court expressly referred the matter under Local Rule of Civil Procedure 72.2(a).  *Id.* Magistrate Judge Alan Kay was randomly assigned the same day.  [Dkt. # 53].

After an unsuccessful attempt to mediate the case, the Magistrate Judge permitted GFIL to file a supplement to its statement on damages and permitted Interstate to respond.  Minute Order (July 9, 2012).  The Magistrate Judge also ordered Interstate to provide the Court with a breakdown of the costs and expenses claimed, a reconciliation with the Bill of Costs, and a summary of the attorneys' fees claim, Minute Order (Aug. 7, 2012), which Interstate filed on August 17, 2012, [Dkt. # 58].   On September 4, 2012, the Magistrate Judge issued a Memorandum Order, finding that Interstate was entitled to reimbursement of the $3,055,000.00 paid to Banks in settlement of the underlying lawsuit; attorneys' fees in the amount of

---

1      The Order was amended the same day to reflect that it was not a "final appealable Order."  Amending Order (March 28, 2012) [Dkt. # 48].

$148,062.00; and costs incurred in defending the underlying lawsuit against Nurse Hand in the amount of $5,186.76; as well as pre-judgment interest at the rate set forth in D.C. Code § 28-3302(a); and post judgment interest at the rate set forth in 28 U.S.C. § 1961(a).  MJ Mem. Order at 12–13.

## STANDARD OF REVIEW

When a party objects to a magistrate judge's recommendation, the court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also Smith v. District of Columbia*, 846 F. Supp. 2d 197, 199 (D.D.C. 2012); *D.D. ex rel. Davis v. District of Columbia*, 470 F. Supp. 2d 1, 1 (D.D.C. 2007).  The Court may "accept, reject, or modify" the magistrate judge's recommendation, "receive further evidence," or "return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

## ANALYSIS

**I.     Interstate is entitled to the entire $3,055,000 that it paid to settle the underlying litigation.**

GFIL's first objection is to the Magistrate Judge's conclusion that Interstate is entitled to the entire $3,055,000 that it paid to settle the underlying litigation.  GFIL's Objections to Sept. 4, 2012 Mem. Order of Mag. J. Kay ("GFIL's Objections") [Dkt. # 62] at 10–12.  It points out that while the Settlement Agreement fully resolved WHC's claims against Nurse Hand, who was insured by Interstate, at the end of day, after the agreement was executed, Progressive – Interstate's other insured – had also been released from any claims against it.  GFIL argues that this release must have factored into the determination of how much of the settlement would be paid to the patient by Interstate and how much would be paid by WHC, and that therefore, some portion of the $3,055,000 paid by Interstate was paid in order to obtain Progressive's release

6

from WHC's indemnification claim.  *Id.* at 11.  GFIL reasons that since it was not the source of any other insurance covering Progressive, it is not required to reimburse Interstate for any portion of the settlement amount that was paid on behalf of Progressive.  *Id.*  In other words, GFIL maintains that Interstate is only entitled to recover the portion of the settlement payment that was attributable to the claims against Nurse Hand.  *Id.*  GFIL further argues that the burden rests on Interstate to prove with reasonable certainty how much of the settlement was paid on behalf of Nurse Hand.  Mem. In Support of GFIL's Position on Damages [Dkt. # 55] at 6–8.  If it fails to meet its burden, GFIL argues, Interstate cannot recover any amount.  *Id.* at 7–8.

At the outset, the Court notes that GFIL's argument is at bottom a defense to liability that was not raised in GFIL's Answer to the Complaint or briefed in the cross-motions for summary judgment.  To raise it at this point – after the close of discovery – and to claim that plaintiff has the burden of coming forward with additional facts now is prejudicial to plaintiff.

At the summary judgment stage, GFIL argued that it was not liable to Interstate for the $3,055,000 because Nurse Hand was not a covered employee of WHC under its insurance agreement with the hospital.  GFIL did not raise an alternative argument that even if Nurse Hand was a covered employee of WHC under its insurance agreement, GFIL is not liable for the portion of the $3,055,000 that was paid to discharge WHC's contribution and indemnification claim against Interstate.[2]  Since GFIL failed to raise this argument in its Answer to the Complaint or during summary judgment briefing, the Court may treat the argument as waived.

---

2       The only place where GFIL raised the issue at all was in its Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment, [Dkt. # 33-1] ("GFIL's MSJ"), where it simply asserted that "the very nature of the relief sought by Interstate attests to the speciousness of its claim as according to its complaint, Interstate expects WHC (through its insurer, GFIL) to indemnify Interstate for funds it paid to settle the very claim for indemnity brought by WHC against Interstate's insured (Progressive)."  *Id.* at 4.   GFIL did not go on to argue that the amount due to Interstate should be offset by the amount of the settlement that was attributable to the settlement of WHC's indemnity claim against Progressive.

7

*See Noble Energy, Inc. v. Salazar*, 691 F. Supp. 2d 14, 23 n.6 (D.D.C. 2010), citing *Grenier v. Cyanamid Plastics, Incl*, 70 F.3d 667, 678 (1st Cir. 1995) (finding that an argument not raised by a party in their summary judgment briefing is waived); *see also Head Start Family Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11*, 46 F.3d 629, 635 (7th Cir. 1995) (waiving arguments not raised in a summary judgment motion before the district court ).   But the contention fails on the merits as well.

GFIL's argument ignores the structure and express language of the settlement agreement.  First, the entire sum paid by Interstate was paid to Banks.  No money was transferred from Interstate to WHC.  And while it is true that the Settlement Agreement expressly resolved WHC's claims against Progressive, the parties presented no evidence at the summary judgment stage that indicates that any portion of the money *paid to the patient* was for the purpose of discharging WHC's claims against Progressive. The Settlement Agreement itself is silent on this point.

What is clear in the Settlement Agreement is that Progressive and WHC both agreed to permanently release and discharge the contribution and indemnification claims that they had filed against the other.  Sophisticated parties sat in a room and hammered out a deal, and the only right they preserved was for Interstate to bring the claim that it brought in this case:  the claim seeking indemnification in reliance upon the "other insurance" clauses in its contract.  This provision operates as a one-way street.  It clearly allows Interstate to seek reallocation of the amount it paid in the settlement, but it does not afford WHC or its insurer, GFIL, the same opportunity.  There are no facts on which the Court could find that WHC or its insurer preserved any ability to offset that amount.  Indeed, the very fact that this reallocation provision was

included for the benefit of Interstate without any parallel safety valve for WHC suggests the very

opposite – that the parties intended that the amount could not be offset.[3]

The Court finds that it must decline GFIL's invitation to go beyond the face of the

contract.   GFIL's premise is that the Court must assume, because the Settlement Agreement

expressly includes, among other things, a release of WHC's claims for indemnity against

Progressive, that the calculation of the amount that the parties to the settlement agreed Interstate

would pay on behalf of its insureds – Progressive and Nurse Hand – took that into consideration.

But if the Court makes this assumption, it must also assume that the calculation of the amount of

the settlement also took into account the expressly stated possibility that GFIL would have to

reimburse Interstate if Interstate were to exercise the right that it reserved to seek reallocation

under the "other insurance" clauses.   In other words, after considering a large number of factors,

all of the parties to the settlement agreed to accept all of the risks and benefits – which were

spelled out in the Settlement Agreement – that flowed from the payment of the specified

amounts.   They memorialized that agreement within the four corners of a contract that specifies

that it represents the entire agreement among the parties.   The Court cannot peel it back and find

– especially in the absence of any facts submitted at the summary judgment phase on this issue –

that there is some unspecified slice of the settlement that falls outside the scope of the agreed-

upon paragraph under which Interstate, and Interstate only, reserved its rights to seek

reallocation of the settlement.[4]

---

3      Moreover, the Settlement Agreement reserved Interstate's right to seek reallocation under any "other insurance" clauses.   Since the type of other insurance clause here is an all-or-nothing proposition, this suggests that the reservation of rights in the Settlement Agreement is also all-or-nothing.

4      Moreover, as Interstate points out in its response to GFIL's objections, it is hard to imagine what value could be ascribed to the release of Progressive since there has been no

Accordingly, the Court will adopt the Magistrate Judge's recommendation that Interstate is entitled to the full amount of $3,055,000 that it paid to Banks to settle the underlying litigation.

## II. Interstate is entitled to pre-judgment interest for the period between payment of the $3,055,000 and the commencement of this action.

GFIL next objects to the Magistrate Judge's determination that Interstate is entitled to pre-judgment interest for the eleven month period between when it paid Banks and when it commenced this action.[5]

GFIL first argues that the $3,055,000 is not a liquidated debt under D.C. Code § 15-108 because that section of the code requires that a liquidated debt be "an easily ascertainable amount." It argues that since Interstate has not apportioned the $3,055,000 between settlement of Banks's claims against Nurse Hand and WHC's claim for contractual indemnity against Progressive, the amount of damages to which Interstate is entitled is not "an easily ascertainable sum." GFIL's Objections at 12. Because the Court has already rejected GFIL's apportionment argument, the Court rejects this argument as well.

Next, GFIL challenges the Magistrate Judge's determination that the eleven-month gap was reasonable. *Id.* "[I]t may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the [plaintiff] has been responsible for undue delay in prosecuting the lawsuit." *Fed. Mktg. Co. v. Va. Impression Prods. Co.*, 823 A.2d 513, 533 (D.C. 2003), quoting *Gen. Motors Corp. v. Devex Corp.*, 641 U.S. 468, 657 (1983). The Magistrate Judge found, however, that courts may only withhold or limit pre-judgment interest under D.C. Code § 15-109

argument that Progressive had any liability to the patient that was independent and not merely derivative of Nurse Hand's.

5       GFIL does not object to the Magistrate Judge's findings that:  (1) Interstate paid the $3,055,000 sum to Banks on August 20, 2009, MJ Mem. Order at 9, and (2) the pre-judgment interest rate set forth at D.C. Code § 28-3302 would apply, should the Court find that Interstate is entitled to pre-judgment interest, *id.* at 13.  *See* GFIL's Objections at 12–13.

– which applies to unliquidated sums – but not under under D.C. Code § 15-108 – which applies to liquidated sums.  MJ Mem. Order at 11.  GFIL did not object to this conclusion.  Thus, since the settlement amount paid by Interstate is a "liquidated sum," section 15-108 applies and pre-judgment interest is mandatory.

The Magistrate Judge only reached the question of whether the eleven-month gap between when Interstate paid the money to Banks and when it brought this action was reasonable because he "assum[ed] *arguendo* that the indemnity payment cannot be characterized as 'liquidated.'"  *Id.*  Since this Court concludes that the indemnity payment was in fact liquidated, it need not reach the question of whether the eleven month gap was reasonable.

## CONCLUSION

Accordingly, the Court will construe the Magistrate's Memorandum Order as a report and recommendation.  Upon *de novo* review, the Court will adopt the Magistrate Judge's findings and recommendations in full.  Interstate will be awarded:  (1) $3,055,000.00, which represents the sum that Interstate paid to Banks; (2) pre-judgment interest on the amount of $3,055,000, for the period between August 20, 2009 and the date of the order accompanying this Memorandum Opinion, at the rate set forth in D.C. Code § 28-3302(a); (3) attorneys' fees in the amount of $148,062.00; (4) costs in the amount of $5,186.72; and (5) post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a).

A separate order and judgment will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 18, 2013